UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| JENNIFER CAREY, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 17-cv-1314-JES-TSH ) |
| MICHELLE BENNETT and JAY NEAL, | ) ) |
| Defendants. | ) ) |

# ORDER AND OPINION

This matter is now before the Court on Defendant Jay Neal's Motion for Summary Judgment. D. 35.[1] Plaintiff filed a response in opposition. D. 37. Defendant filed a reply to Plaintiff's response. D. 40. For the reasons set forth below, Defendant's Motion is GRANTED.

## BACKGROUND

The following facts are undisputed. This case stems from an investigation by the Illinois Department of Children and Family Services ("DCFS") for possible child abuse or neglect. D. 36, at 2. On September 10, 2016, DCFS received a report that Plaintiff Jennifer Carey ("Carey") drove while intoxicated with her daughter in the vehicle, thereby placing her daughter at risk. *Id*. at 2, 4. The case was assigned to a DCFS investigator, Defendant Michelle Bennett ("Bennett"). *Id*. at 2. Defendant Jay Neal ("Neal") was Bennett's full-time supervisor, having been promoted to the supervisor position seven days before the report against Carey. *Id*. Neal's role as supervisor was to guide Bennett's investigation and to review all the information before they made a final decision to either indicate or unfound the report. *Id*. at 5. An indicated report means the investigator has determined that credible evidence of the alleged abuse or neglect exists,

---

[1] Citations to the Docket in this case are abbreviated as "D. __."

while an unfounded report means the investigator found no credible evidence of abuse or neglect. 325 Ill. Comp. Stat. 5/3; 89 Ill. Adm. Code § 300.20. An investigator may also find the report is undetermined, which means it was not possible to initiate the investigation or complete it within 60 days based on information provided to DCFS. *Id.*

On October 31, 2016, DCFS issued its final report indicating Carey for Allegation 60 – Environment Injurious to Health and Welfare. D. 36, at 3. Carey appealed the indicated report through an administrative hearing. *Id.* at 4. Neal did not testify at the administrative hearing. *Id.* at 5. The Administrative Law Judge found DCFS did not meet its burden of proof that Carey was intoxicated during the incident and recommended the indicated report be overturned. *Id.* The Director of DCFS adopted the Administrative Law Judge's findings and recommendations from the hearing and expunged the indicated report against Carey. *Id.*

Sometime after the investigation began, but before the indicated report was issued, Carey accepted a job offer from McDonough District Hospital. *Id.* at 7. Carey informed the hospital of the indicated report the same day she received notice. *Id.* The hospital told Carey her job would be held, and she could begin her employment as soon as the report was unfounded. *Id.* It is not clear from the record when Carey was originally supposed to start her new job.

Throughout the investigation, Neal did not know Carey was a licensed nurse or that she had applied for a position at a hospital. *Id.* at 10. Bennett's case notes do not report Carey's employment status or profession. *Id.* In fact, the police report from the incident contains the only mention of Carey being a nurse. *Id.* It was not until the administrative appeal process began that Neal learned Carey was a nurse and had accepted a job. *Id.*

Neal now moves for summary judgment on Counts I and III as applied to him. D. 35. Count I is a claim pursuant to 42 U.S.C. § 1983, alleging Neal violated Carey's procedural and

2

substantive due process rights by indicating Carey for child abuse/neglect without providing her what are commonly referred to as *Dupuy* protections and by not considering exculpatory evidence. *Id.* Count III is a state law claim for malicious prosecution. *Id.*[2]

In her response to the motion for summary judgment, Carey stated she is pursuing only her procedural due process claim against Neal. D. 37, at 18. Carey argues Neal violated her due process rights by failing to properly conduct the investigation of Carey pursuant to *Dupuy v. Samuels*, 397 F.3d 493 (7th Cir. 2005). *Id.* at 1. Carey states that summary judgment is not appropriate because numerous material facts are disputed. *Id.* at 2. Since Carey is not pursuing her substantive due process violation and malicious prosecution claims against Neal, the Court grants summary judgment in favor of Neal on Count III and this opinion will address only Carey's procedural due process claim.

Neal argues he is entitled to summary judgment on the procedural due process claim. First, Neal argues the doctrine of *respondeat superior* does not apply to § 1983 actions and there is no evidence Neal played a significant role in the investigation beyond supporting and supervising Bennett. D. 36, at 12. Second, Neal argues Carey cannot establish a procedural due process claim because she does not have a cognizable liberty interest under the Fourteenth Amendment. *Id.* at 13. Even if she did have such an interest, Neal states Carey already received adequate due process and her claim is moot. *Id.* at 16.

## LEGAL STANDARD

Summary judgment is proper where the materials in the record demonstrate that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. The role of the judge in resolving a motion for summary judgment is not

---

[2] Plaintiff also filed Counts I and III against Defendant Michelle Bennett. Count II was brought solely against George Sheldon for supervisory liability and was dismissed when he was terminated from the case. D. 22, at 2.

3

to weigh the evidence for its truth, but to determine whether sufficient evidence exists for a jury to return a verdict in favor of the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court will construe the record "in the light most favorable to the non-movant" in deciding whether the case involves genuine issues of fact requiring a trial. *Payne v. Pauley*, 337 F.2d 767, 770 (7th Cir. 2003).

To prevail on a procedural due process claim, "a plaintiff must establish that a state actor deprived him of a constitutionally protected liberty or property interest without due process of law." *Hinkle v. White*, 793 F.3d 764, 767 (7th Cir. 2015) *quoting Dupuy v. Samuels*, 397 F.3d 493, 503 (7th Cir. 2005). Accordingly, the claim is evaluated with a two-step inquiry: First, whether there a liberty or property interest with which the state has interfered; and second, whether the procedures attendant upon that deprivation were constitutionally sufficient. *Id.*

"When the government deprives an individual of a protected liberty interest, that individual must be afforded not only adequate notice but also a reasonable opportunity to be heard." *Doyle v. Camelot Care Ctrs., Inc.*, 305 F.3d 603, 617 (7th Cir. 2002). The precise timing and form of the procedures hinge upon the particularities of the situation. "Due process is flexible, requiring different procedural protections depending upon the situation at hand." *Id.* at 618.

## DISCUSSION

The parties agree § 1983 claims may only be brought against individuals who were personally involved in the constitutional deprivation a plaintiff purportedly suffered. D. 37, at 8. Neal argues his role in the investigation was insignificant and Carey's claim against him amounts to "mere negligent supervision," which is insufficient to establish a constitutional violation. D. 36, at 12. Carey argues the facts adequately demonstrate Neal's involvement in the due process

4

violation because he was involved in the decision to indicate Carey and he did not review the exculpatory evidence as required. D. 37, at 8. Carey also argues Neal should have noticed Carey's profession was absent from Bennett's case notes and should have followed-up to determine whether Carey was eligible for a *Dupuy* conference before the indicated finding. *Id*.

It is well-settled that there is no cognizable liberty interest affected when a state actor makes allegations that merely damage one's reputation. *Doyle v. Camelot Care Ctrs., Inc.*, 305 F.3d 603, 617 (7th Cir. 2002). "[M]ere defamation by the government does not deprive a person of liberty protected by the Fourteenth Amendment, even when it causes serious impairment of one's future employment." *Id. quoting Hojnacki v. Klein-Acosta*, 285 F.3d 544, 548 (7th Cir. 2002) (internal quotations and citations omitted). However, procedural safeguards come into play when the government's actions amount to an "alteration of legal status," such as the deprivation of a right previously held, combined with the injury resulting from the defamation. *Id.* If a state actor casts doubt on an individual's "good name, reputation, honor or integrity" in such a manner that the individual finds it virtually impossible to find new employment in his chosen field, then the government has infringed on an individual's liberty interest to pursue the occupation of his choice. *Id.*

The following three elements must be shown to determine whether the government has infringed on an individual's occupational liberty interest: (1) the individual was stigmatized by the government's actions; (2) the stigmatizing information was publicly disclosed; and (3) the individual suffered a tangible loss of other employment opportunities as a result of the public disclosure. *Dupuy v. Samuels,* 397 F.3d 493, 509 (7th Cir. 2005). The first element is not disputed: Neal concedes Carey was stigmatized by the disclosure of the indicated report. Indeed,

being labeled a child abuser certainly calls into question one's "good name, reputation, honor, or integrity." *Id.* at 510.

With regards to the second element, Neal argues he did not personally disclose the indicated finding to the hospital and, in fact, Carey was the one who informed the hospital of the indicated report. D. 36, at 13. This argument is not persuasive because Neal was involved in the final decision to indicate Carey, which led to her name being added to the State Central Register for child abuse and neglect. The Seventh Circuit has said the second element is satisfied by listing an individual who has an indicated report against him on a state register because it amounts to dissemination to potential employers "by operation of state law." *Dupuy*, 397 F.3d at 510. Illinois law requires as a condition of employment that "all current and prospective employees of a child care facility who have any possible contact with children in the course of their duties" must authorize DCFS to conduct a background check to determine if the person has an indicated report against him. 225 Ill. Comp. Stat. 10/4.3. Through his personal involvement in the decision to indicate Carey for neglect, Neal participated in the public dissemination of the report to employers in Carey's chosen field of work.

The third element – whether Carey suffered a tangible loss of employment opportunities due to the indicated report – is satisfied by reading the record in a light most favorable to Carey. Carey's start date at McDonough District Hospital was delayed because of the indicated report. D. 36, at 7. Carey disclosed the indicated report to the hospital because she wanted to "see if it would affect [her] job" and she was informed she could not work as a registered nurse if she had been indicated for neglect or abuse. D. 36-1, at 12. When Carey said she would fight the indicated report, she was told she "would have a job waiting for [her]" as soon as the report was overturned. *Id*. Carey started working at the hospital in April 2017. *Id*. at 6. With all three

elements satisfied, it is apparent Neal's actions contributed to an infringement of Carey's occupational liberty interest. The Court must now turn to evaluate whether Carey was afforded a reasonable opportunity to address the infringement.

"The hallmark of due process is an opportunity to be heard at a meaningful time and in a meaningful manner." *Dupuy*, 397 F.3d at 507. *Dupuy* mandates that individuals who work with children are entitled *to request* an administrative conference before DCFS indicates and discloses a report of abuse or neglect, which allows the accused individual to hear the evidence against them and respond to the allegations. *Id.* (emphasis added). The pre-indication conference is considered an appropriate balance between the accused child care worker's interests in avoiding an unjust determination and maintaining employment and the state's interests in protecting children and identifying individuals who pose a continuing threat to children. *Id.* at 509. Before the indicated report is issued, DCFS must provide the accused individual an explanation of the evidence upon which the proposed indicated report is based. *Id.* The accused is then given the opportunity to tell her side of the story to a DCFS administrator who was not involved in the investigative process. *Id.* at 508. The accused may present evidence but may not cross-examine witnesses or call her own witnesses. *Id.* The administrator must decide whether credible evidence exists to indicate abuse or neglect, which is the same standard of proof used in the investigative process. *Id.* at 504. In other words, the administrator must determine if "the available facts, when viewed in light of surrounding circumstances, would cause a reasonable person to believe that a child was abused or neglected." *Id*. quoting 89 Ill. Admin. Code § 336.20. If the administrator agrees there is credible evidence of abuse or neglect, then the indicated report is issued. *Id.* at 507. An indicated individual may appeal the decision before an Administrative Law Judge, who

applies a heightened standard to determine whether DCFS proved its case by a preponderance of the evidence. *Id.* at 508.

Neal argues Carey was not entitled to the additional due process protections created by *Dupuy* because those protections do not apply to nurses in general, only those who work in child-related specialties. D. 36, at 17. In addition, Neal argues Carey's due process claim is moot because after the indicated report was issued, Carey had a hearing with an Administrative Law Judge and the indicated report was overturned. *Id.* Neal also states he was not aware of Carey's profession and did not know she had accepted a job at the hospital before the indicated report was issued. *Id.*

Carey argues she was entitled to *Dupuy* protections because the DCFS definition of child care workers includes employees of hospitals or health care facilities or those individuals seeking employment in such facilities. D. 37, at 11. Carey claims DCFS investigators must determine whether an accused individual is a child care worker and Neal failed to confirm Carey's profession. *Id.* at 12. Carey also argues that because the Administrative Law Judge overturned the indicated report, it is proof that Carey would have prevailed at a pre-indication conference. *Id.*

Carey may be considered a child care worker for purposes of a DCFS investigation because she is a registered nurse and had applied for nursing positions at local hospitals when the investigation began. A child care worker includes any person "employed to work directly with children" or those who "at the time of the notice of investigation, he or she: has applied for, or will apply within 180 days for, a position as a child care worker." 89. Ill. Adm. Code § 300.20. Child care facilities as defined include hospitals or health care facilities, among other institutions that arrange for care or placement of children. *Id*. Without evidence that Carey was applying for

or had accepted a position limited to treating adults, it is hard to imagine that Carey would not work directly with children from time to time as a nurse. This is supported by the fact that Carey could not start working at the hospital until she had overturned the indicated report. While Carey may meet the definition of a child care worker, both Neal and Carey seem to overlook an important distinction: that the investigation was not employment-related and Carey never requested it be treated as such.

Since the investigation was related to Carey's personal life, she had to request that it be treated as employment-related to trigger the *Dupuy* protections afforded to child care workers. "Alleged perpetrators who are named in reports of abuse and/or neglect that are not related to their child care employment may choose to participate in an expedited process by informing the investigator that they would like the investigation treated as an employment related investigation subject to the procedures of this subsection (c)." 89 Ill. Adm. Code § 300.160(c)(1)(C). Carey was on notice from the beginning of the investigation that it was her choice, not the investigator's mandate, to take advantage of the additional due process protections offered to child care workers. The notice of investigation given to Carey on September 11, 2016 stated, "You must tell the Child Protection Service Worker that you want the investigation to be treated as an employment-related investigation which means that you would receive a Notice of Intent to Indicate, an opportunity for an Administrator's Teleconference and an opportunity for an expedited hearing as outlined below." D. 37-4, at 4. Carey does not claim she requested the investigation be treated as employment-related; therefore, there was no violation of her procedural due process rights when she did not get an administrative conference before she was indicated for neglect.

Finally, Carey argues her due process rights were violated because Neal failed to develop

9

or consider exculpatory evidence before deciding to indicate the report of neglect. D. 37, at 14. As stated above, the standard of proof to indicate a report of abuse or neglect is whether "the available facts, when viewed in light of surrounding circumstances, would cause a reasonable person to believe that a child was abused or neglected." 89 Ill. Admin. Code § 336.20. The credible evidence standard involves giving equal consideration to inculpatory and exculpatory evidence. *Dupuy*, 397 F.3d at 505. Nevertheless, "*Dupuy* merely requires DCFS workers to consider exculpatory evidence—not to treat it as dispositive." *Sebesta v. Davis*, 878 F.3d 226, 235 (7th Cir. 2017).

In his deposition, Neal explained why he and Bennett decided to indicate Carey for neglect. D. 36-2*.* at 95-7, 111-12. A final report summarized the inculpatory and exculpatory evidence on which they based their decision. *Id.* at 55. The exculpatory evidence for this case included statements from interviews with Carey and Carey's daughter. D. 36-3, at 5. Neal said they could also consider evidence not listed in the investigation summary, such as a statement from Carey's sister that Carey was not intoxicated that night. D. 36-2, at 60-2. Carey points to the fact she was not arrested for driving under the influence as exculpatory evidence that Neal did not consider. D. 37, at 14. However, it appears Neal did consider this and felt it was outweighed by other evidence, such as Carey's admission she had been drinking, the fact she was not allowed to drive home, she smelled of alcohol, and Neal's belief that Carey was not arrested because she was already out of the car when police arrived and said they could not prove she was driving. D. 36-2, at 110-12, 133-34. When asked whether she thought Neal acted in good faith based on the information he had, Carey even admitted, "If I would have read the report, I probably would have come to the same conclusion." D. 37-5, at 29.

10

After Carey was indicated for neglect, she received adequate due process when she appealed the decision to an Administrative Law Judge. The indicated report was subsequently overturned and Carey's name was removed from the state register. As stated above, the Administrative Law Judge determines whether a report should be indicated by a preponderance of the evidence, rather than the credible evidence standard used by DCFS. The fact that the indicated report was overturned does not prove Neal failed to consider exculpatory evidence because Neal applied a lower standard of proof than is applied in an administrative appeal.

To prevail on her procedural due process claim, Carey had to establish that Neal deprived her of a constitutionally protected interest without due process of law. Carey established she had an occupational liberty interest and Neal deprived her of that interest when he participated in the decision to indicate Carey for neglect. Nonetheless, Carey's right to due process was not infringed. Carey cannot blame Neal for not receiving a pre-indication administrative conference because Carey never asked for the investigation to be treated as employment related, which would have triggered *Dupuy* protections. Neal found there was credible evidence of neglect despite the exculpatory evidence. Carey had a reasonable opportunity to be heard when she appealed the indicated report to an Administrative Law Judge and as a result, she received adequate due process of law. As such, summary judgment is granted with regards to Counts I and III as applied to Neal.

## CONCLUSION

For the reasons set forth above, Defendant Jay Neal's Motion is GRANTED. The Clerk is directed to terminate Defendant Jay Neal from this case.

Signed on this 10th day of January, 2020.

s/James E. Shadid<br>
James E. Shadid<br>
United States District Judge